Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VI-ESPECIAL

| JOCIEL MANUEL FERREIRO CEPERO<br><br>Apelado<br><br>v.<br><br>COMISIONADO DE LA POLICÍA DE PUERTO RICO Y EL ESTADO LIBRE ASOCIADO DE PUERTO RICO, REPRESENTADOS POR EL SECRETARIO DE JUSTICIA, DOMINGO EMANUELLI HERNÁNDEZ<br><br>Apelantes | KLAN202500448 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Ponce<br><br>Caso número: PO2024CV01301<br><br>Sobre: Impugnación de confiscación |

Panel integrado por su presidenta, la jueza Ortiz Flores, la juez Aldebol Mora y la jueza Boria Vizcarrondo.

Aldebol Mora, Juez Ponente

# SENTENCIA

En San Juan, Puerto Rico, a 21 de agosto de 2025.

Comparece la parte apelante, Gobierno de Puerto Rico, representado por la Oficina del Procurador General de Puerto Rico (Estado o apelante) y solicita que revoquemos la *Sentencia* emitida el 18 de febrero de 2025, notificada el 21 del mimo mes y año, por el Tribunal de Primera Instancia, Sala Superior de Ponce. Mediante el referido dictamen, el foro apelado declaró con lugar la solicitud de sentencia sumaria presentada por la parte apelada, Jociel Manuel Ferreiro Cepero (Ferreiro Cepero o apelada). En consecuencia, declaró con lugar la demanda sobre impugnación de confiscación y ordenó la devolución del vehículo confiscado a Ferreiro Cepero.

Por los fundamentos que exponemos a continuación, se revoca el dictamen apelado y se devuelve el caso al foro primario para la continuación de los procedimientos.

Número Identificador

SEN2025 _____

I.

El 8 de mayo de 2025, Ferreiro Cepero (dueño registral) y Kevin Narváez Díaz (Narváez Díaz) (poseedor) instaron una *Demanda[1]* sobre impugnación de confiscación. En esta, Ferreiro Cepero alegó ser el dueño y titular registral del vehículo de motor todo terreno *(four track)* marca Can-Am, modelo Renegade 1000 XXC, color amarillo, tablilla FUA266 año 2012, número de serie: 3JBMXLP14CJ000537. En síntesis, alegaron que el **3 de marzo de 2024**, la Policía de Puerto Rico intervino con Narváez Díaz, quien estaba en posesión autorizada del referido vehículo, por alegada infracción al Art. 10.16[2] de la *Ley de Vehículos y Tránsito de Puerto Rico.*[3] En el transcurso de la intervención, el Agte. Kervin Morales, placa 21928 (Agte. Morales), procedió a incautarle el vehículo antes descrito a Narváez Díaz para fines de confiscación[4].

Los demandantes alegaron que la confiscación se efectuó de forma ilegal, inconstitucional y/o contraria a derecho, porque el vehículo en controversia poseía tablilla y registración ante el Departamento de Transportación y Obras Públicas (DTOP) que lo autorizaba a transitar por las vías públicas del país. Además, afirmaron que el vehículo en cuestión no se relacionaba con la comisión de acto delictivo alguno. Como argumento adicional en su

---

[1] Apéndice del recurso, Anejo V, págs. 30-32.
[2] 9 LPRA § 5296(a).
[3] Ley Núm. 22 de 7 de enero de 2000, según enmendada. 9 LPRA § 5001 et seq.
[4] Del *Informe de Incidente*[4] surge lo siguiente:

> 3 DE MARZO DE 2024, HORA 2:15 PM, SECTOR 3088, SE DENUNCIA AL SR. KEVIN DANIEL NARVÁEZ DÍAZ, POR ESTE CONDUCIR UN VEHÍCULO TODOTERRENO, FOURTRACK, POR LA VÍA PÚBICA PAVIMENTADA SIN SER UN VEHÍCULO AUTORIZADO POR EL HONORABLE SECRETARIO DE TRANSPORTACIÓN Y OBRAS PÚBLICAS DE PUERTO RICO. CASO CITADO.

> 3 DE MARZO DE 2024, SE OCUPO VEHICULO TODO TERRENO FOURTRACK, MARCA CAN-AM, MODELO 1000 XXC, COLOR AMARILLO, AÑO 2012, NÚN. DE SERIE 3JBMXLP14CJ000537, TABLILLA FUA-266, YA QUE LA TABLILLA DEL MISMO FUE OCUPADA PARA SER ENTREGADA AL DEPARTAMENTO DE TRANSPORTACIÓN Y OBRAS PÚBLICAS DE PUERTO RICO.

demanda, alegaron que la notificación de la orden de confiscación a éstos no se hizo conforme dispone la *Ley Uniforme de Confiscaciones de 2011* (Ley de Confiscaciones)[5]. Por tanto, solicitaron al TPI que declarase con lugar la demanda, se anulara la confiscación del vehículo todo terreno y se ordenara la devolución de este o su justo valor en el mercado, así como los intereses correspondientes.

El 13 de junio de 2024, el Estado presentó *Contestación a Demanda*[6]. En lo aquí pertinente, negó que la confiscación fuera ilegal y alegó afirmativamente que el vehículo todo terreno fue utilizado en violación al Artículo 10.16, inciso (a) de la Ley Núm. 22, *supra.* También negó que la notificación a los demandantes no se hiciera conforme con lo establecido en la Ley de Confiscaciones, *supra,* sino que alegó afirmativamente que los demandantes sí fueron notificados conforme con el referido estatuto. Como parte de sus defensas afirmativas, el Estado planteó la presunción de legalidad de la confiscación —indistintamente la acción penal, administrativa o cualquier procedimiento relacionado a los mismos hechos— que el demandante tenía el peso de la prueba para derrotar la legalidad de la confiscación y, que en los casos en que se incaute y retenga cualquier propiedad para fines de investigación relacionada a cualquier acción penal, civil o administrativa, el término para culminar la investigación y emitir la orden de confiscación no excederá de noventa (90) días, por lo que los treinta (30) días para notificar la confiscación a los demandantes comienzan a decursar una vez concluya la investigación y se expida la orden de confiscación. En virtud de lo anterior, solicitaron se declare no ha lugar la demanda instada.

---

[5] Ley Núm. 119 de 12 de Julio de 2011, según enmendada, 34 LPRA § 1724 *et seq.*
[6] Apéndice del recurso, Anejo VI, págs. 37-42.

Luego de varios tramites procesales[7], Ferreiro Cepero presentó *Moción en Solicitud de Sentencia Sumaria Enmendada[8]*. En resumen, alegó que el vehículo en cuestión fue confiscado a tenor de la Ley de Confiscaciones, *supra*, y no bajo la *Ley para la Protección de la Propiedad Vehicular[9]*, por lo que la notificación de la orden de confiscación se hizo fuera del término jurisdiccional de treinta (30) días, contados a partir de la fecha de ocupación del vehículo, conforme establece la Ley de Confiscaciones, *supra*. Añadió que no constaba notificación de la referida orden al poseedor autorizado, Narváez Díaz. En virtud de lo anterior, Ferreiro Cepero propuso como único hecho en controversia, si procedía declarar con lugar la demanda por cuanto la notificación a las partes no se efectuó conforme a derecho. En apoyo a su contención, Ferreiro Cepero acompañó copia de la notificación de la confiscación y copia frontal y posterior del sobre y matasellos. Así, arguyó que ante la inexistencia de hechos en controversia en cuanto a la falta de notificación efectiva y/o conforme a derecho, procedía como cuestión de derecho, declarar con lugar la solicitud de sentencia sumaria.

Así las cosas, el 12 de noviembre de 2024, el Estado presentó *Moción en Oposición a Sentencia Sumaria[10]*. En esta, consignó que existía como asunto litigioso en controversia el determinar si procede o no declarar con lugar la demanda de impugnación mediante sentencia sumaria basada en la alegación de notificación tardía. Sobre el particular, alegó que el vehículo objeto de controversia fue registrado de manera ilegal, pues al ser un vehículo

---

[7] El 9 de julio de 2024, notificada el 10 de igual mes y fecha, el TPI emitió *Sentencia Parcial* por desistimiento, con perjuicio, en cuanto al codemandante Narváez Díaz. Anejo VIII, págs. 47-48.

[8] Apéndice del recurso, Anejo XI, págs. 64-76.

[9] Ley Núm. 8 de 5 de agosto de 1987, según enmendada, 9 LPRA § 3201 *et seq.*

[10] Apéndice del recurso, Anejo XII, págs. 77-87. En apoyo de su oposición, el Estado acompañó los siguientes documentos: Informe de Incidente (Anejo I), Orden de Confiscación (Anejo II), Notificaciones (Anejo III) y Envío de Tablilla ocupada (Anejo IV).

todo terreno *(four track),* este no está autorizado a transitar por la vía pública pavimentada, por lo que la tablilla del vehículo fue ocupada para fines de investigación. En vista de lo anterior, argumentó que el Artículo 13 de la Ley de Confiscaciones, *supra,* establece que cuando un vehículo es ocupado para fines de investigación, el Estado tiene noventa (90) días para completar la misma y gestionar la orden de confiscación. Así, señalaron que, una vez emitida la orden de confiscación, el Estado debe notificar a las partes dentro del término de treinta (30) días, contados a partir de la expedición de la orden de confiscación. El Estado añadió que la investigación no tomó los noventa (90) días autorizados por ley. En ese sentido, el Estado sostuvo que, en el presente caso, la ocupación del vehículo ocurrió el 3 de marzo de 2024, la Orden de Confiscación fue emitida el 20 de marzo de 2024—es decir, 17 días después de la ocupación. Señaló que dicha orden se notificó a las partes el 11 de abril de 2024, esto es 22 días después de emitida, por lo que la notificación se hizo conforme a derecho y dentro del término jurisdiccional aplicable. Por lo anterior, solicitaron se declare no ha lugar la solicitud de sentencia sumaria presentada por Ferreiro Cepero y se señalara vista en su fondo.

El 18 de febrero de 2025, notificada el 21 del mismo mes y año, el TPI emitió la *Sentencia* apelada. En ésta, consignó como hechos materiales que no están en controversia, los que se transcriben a continuación:

1. El vehículo marca Can-Am, modelo Renegade 1000 XXC, matrícula FUA266, año 2012, con número de serie 3JBMXLP14CJ000537 está registrado en el Departamento de Transportación y Obras Públicas a nombre de Jociel Manuel Ferreiro Cepero con dirección postal: "P.O. Box 233, Garrochales, PR 00652-02363".

2. El 3 de marzo de 2024 el Agente Kervin Morales, placa 21528, ocupó el vehículo de motor marca Can-Am, modelo Renegade 1000 XXC, matrícula FUA 266, año 2012, con número de serie 3JBMXLP14CJ000537 a Kevin Daniel Narváez Díaz en [l]a Carr. 143, KM 29.9 Bo. Ortiga en Villalba por violación al Art. 10.16 de la Ley de Tránsito, en Villalba, Puerto Rico.

3. Del Informe de Incidente se desprende que el "3 de marzo de 2024, hora 2:15pm, sector 3088, se denuncia al Sr. Kevin Daniel Narváez Díaz, por éste conducir un vehículo todo terreno, fourtrack, por la vía pública sin ser un vehículo autorizado por el Honorable Secretario de Transportación y Obras Públicas de Puerto Rico. Caso citado".

4. La fecha de esclarecimiento establecida en el Informe de Incidente es del 3 de marzo de 2024.

5. Para el 20 de marzo de 2024, el fiscal Alfredo Lugo Meléndez ordenó la confiscación del vehículo y la tablilla fue ocupada para ser entregada al Departamento de Transportación y Obras Públicas de PR.

6. El 20 de marzo de 2024, se emitió la Orden de Confiscación en donde se indica que el dueño registral es Jociel Manuel Ferreiro Cepero con dirección "Bo Cordillera Villalobos, Carr. 146 Km. 21.0, Ciales, PR".

7. El vehículo marca Can-Am, modelo Renagade 1000 XXC, matrícula FUA266, año 2012, con número de serie 3JBMXLP14CJ000537 fue tasado el 8 de abril de 2024 por la cantidad de $13,000.00.

8. El 25 de marzo de 2024, el [N]egociado de la [P]olicía envió una carta al Departamento de Transportación y Obras Públicas de Ponce para notificar el envío de la tablilla FUA-266 que "fue ocupada por violación a la Ley 8; ya que la misma no le corresponde por ser un vehículo todo terreno (fourtrack), no autorizado a transitar por la vía pública pavimentada".

9. La Junta de Confiscaciones envió una carta de notificación de la Confiscación, por correo certificado núm. 9586 0710 5270 0504 1106 60, el 10 de abril de 2024, depositado en el correo postal el 11 de abril de 2024 dirigida a Jociel Manuel Ferreiro Cepero a la dirección: "P.O. Box 233, Garróchales, PR 00652-0233".

10. La Junta de Confiscaciones envió una carta de notificación de la Confiscación, por correo certificado núm. 9589 0710 5270 0504 1106 84, el 10 de abril de 2024, depositada en el correo postal el 11 de abril de 2024 dirigida a Kevin Daniel Narváez Díaz a la dirección: "Bo. Quebrada Arena Carr. 645KM 1.9, Vega Baja, PR 00693". La notificación fue devuelta por el servicio de correo indicando: "RETURN TO SENDER. INSUFFICIENT ADDRESS. UNABLE TO FOWARD"

11. La Junta de Confiscaciones envió una carta de notificación de la Confiscación, por correo certificado núm. 9589 0710 5270 0504 1106 77, el 10 de abril de 2024 depositado en el correo postal el 11 de abril de 2024 dirigida a Jociel Manuel Ferreiro Cepero a la dirección: "Bo. Cordillera Villalobos, Carr. 146 KM 21.0, Ciales, PR, 00638". La notificación fue devuelta por el servicio de correo indicando: "RETURN TO SENDER. NOT DELIVARABLE AS ADDRESSED. INSUFFICIENT ADDRESS. UNABLE TO FORWARD. RETURN TO SENDER".

12. De la carta de notificación se indica que "[e]l vehículo se ocupó y se retuvo para investigación y evidencia física por

> hechos relacionados al caso; por lo cual la Orden de Confiscación fue emitida el 20 de marzo de 2024".[11]

En virtud de las anteriores determinaciones, el foro apelado concluyó que, según el Informe de Incidente, el vehículo fue ocupado el 3 de marzo de 2024, y esa misma fecha fue la que se consignó como fecha de esclarecimiento. Ante el hecho de que el Fiscal emitió la orden de confiscación el 20 de marzo de 2024, y esta fue notificada el 10 de abril de 2024, depositada en el correo postal el 11 de abril de 2024, el foro primario, citando lo resuelto por el Tribunal Supremo de Puerto Rico en *Reliable Financial v. ELA,* 197 DPR 289 (2017), concluyó que era indispensable que el Estado justificara el propósito de la investigación y estableciera si la retención era con el fin de asistir en una investigación.  Por tanto, y conforme expuesto por el Alto Foro en *Reliable v. ELA,* supra, la mejor práctica era revelar al dueño o persona con interés en la propiedad los motivos de la investigación lo más cercano a la incautación, evitando así justificaciones *a posteriori* para la demora por parte del Estado. En virtud de lo anterior, el TPI concluyó que, en la comunicación cursada a los demandantes, el Estado no informó sobre los motivos de la investigación realizada que justificara la retención de la propiedad. El foro apelado basó su análisis en la fecha de esclarecimiento consignada en el Informe de Incidente que es la misma fecha en que se ocupó el vehículo todo terreno, y que no fue hasta el 20 de marzo de 2024, que se expidió la orden de confiscación. Añadió que, del aludido informe, ni de la prueba acompañada, surgen qué gestiones, si alguna, se realizaron entre la fecha de la ocupación hasta la fecha en que el Estado emitió la orden de confiscación para explicar la retención del vehículo todo terreno. En ese sentido, el TPI añadió que el Estado no acompañó evidencia que le permitiera concluir las razones que justificaran retener el

---

[11] Notas al calce omitidas.

vehículo ni tampoco por qué esperó hasta el 10 de abril de 2024 para notificar a los demandantes. Así, concluyó que el Estado no logró establecer bajo el estándar probatorio aplicable que, en efecto, se hizo una investigación relacionada con el vehículo ocupado. El foro apelado consignó que, entre la fecha del 3 de marzo de 2024 y la fecha de notificación del 10 de abril de 2024, habían transcurrido 38 días. Por consiguiente, el foro *a quo* concluyó que la notificación fue tardía, pues el Estado no estableció en qué consistió la alegada investigación con el fin de justificar la retención del vehículo para que aplicara el término dispuesto cuando se realiza una investigación de conformidad con la Ley de Confiscaciones, *supra.* Por ello, el TPI concluyó que no existían controversias de hechos esenciales y pertinentes que impidieran dictar sentencia por la vía sumaria. Por ende, concluyó que el Estado incumplió con el requisito preceptuado en el primer párrafo del Artículo 13 de la Ley de Confiscaciones, supra, por lo que la confiscación era nula.

En otros extremos, el TPI resolvió además que la notificación al poseedor autorizado, Narváez Díaz, llegó devuelta, por lo que el Estado debió intentar realizar un esfuerzo razonable adicional para reproducir nuevamente el envío de esa notificación. Añadió que el Estado no podía tomar livianamente que la notificación se devolvió sin ser reclamada, de modo que la parte no fue advertida de la confiscación. El TPI basó su determinación en lo resuelto por el Tribunal Supremo de Puerto Rico en el caso *Román Ortiz v. OGPe,* 203 DPR 947 (2020). Por ello, determinó que la confiscación por parte del Estado fue nula, tanto por notificación tardía, como por falta de notificación adecuada a Narváez Díaz.

En virtud de ello, declaró con lugar la solicitud de sentencia sumaria, declaró con lugar la demanda y ordenó la devolución del vehículo en controversia o, en su defecto, el importe de tasación, más el interés legal 4.50%.

Inconforme, el Estado presentó *Moción en Solicitud de Reconsideración*, en la que reiteró los argumentos esbozados en su oposición a sentencia sumaria, a saber, que el vehículo fue registrado de forma ilegal y que la tablilla fue ocupada para efectos de investigación. En lo atinente al recurso ante nos, el Estado señaló que la notificación de confiscación a las partes expresaba la existencia de una investigación en curso. Respecto a la fecha de esclarecimiento consignada en el Informe de Incidente, el Estado expresó que esta se refiere en cuanto a la persona sospechosa. Al respecto, el Estado alegó que la persona detenida, Narváez Díaz, era la persona que iba conduciendo el vehículo todo terreno, por lo que ya esa cuestión estaba esclarecida y la Policía no estaba buscando un sospechoso. Destacaron que ello no quería decir que la investigación se daba por concluida, pues el caso se consultaba con el Ministerio Público y la investigación seguía en curso, por lo que el hecho de que ya se tenga a un sospechoso no da lugar automáticamente a que se presente el caso criminal, sino que hay que llevar a cabo una investigación y trabajo de corroboración. Respecto a la falta de justificación en la carta de notificación, señaló que el TPI no consideró que la notificación especificaba que la retención del vehículo era para fines investigativos relacionados al caso. Al respecto, destacaron que el hecho de que no se incluyeran más detalles en la notificación no significaba que no existiera una justificación válida para la retención del vehículo. En cuanto a la devolución de la notificación de Narváez Díaz, el Estado alegó que cumplió con el requisito de notificación preceptuado en la Ley de Confiscaciones, *supra.*

Oportunamente, Ferreiro Cepero presentó su oposición a la solicitud de reconsideración[12]. El 17 de marzo de 2025, notificada el

---

[12] Anejo III, págs. 26-27.

18 de igual mes y fecha, el TPI emitió *Resolución* en la que denegó la reconsideración de su dictamen.

Insatisfecho, el Estado comparece ante nos y le imputa al foro primario la comisión de los siguientes señalamientos de error:

SEÑALAMIENTOS DE ERROR:

Erró el Tribunal de Primera Instancia al darle paso a la moción dispositiva presentada por la parte apelada cuando la prueba documental demostró la necesidad de retener el vehículo de motor para una investigación paralela de conformidad con el Artículo 13 de la Ley Uniforme de Confiscaciones de 2011 y al no tomar en cuenta que, como mínimo, existe controversia de hechos sobre si el vehículo fue ocupado para fines investigativos en cumplimiento con ese articulado.

Erró el Tribunal de Primera Instancia al determinar que el Estado debía realizar esfuerzos adicionales razonables para reenviar la notificación de la confiscación una vez esta fue devuelta por el servicio de correo, a pesar de que el caso *Román* Ortiz *v. OGPe* es totalmente irrelevante a nuestros hechos.

El 14 de julio de 2025, Ferreiro Cepero presentó *Alegato Parte Apelada.*

Con el beneficio de la comparecencia de las partes, estamos en posición de resolver.

II.

A.

La Asamblea Legislativa promulgó la *Ley de Vehículos y Tránsito,* y sus subsiguientes enmiendas, con la intención de promover y velar por la seguridad pública en todas sus variantes[13]. En lo aquí pertinente, el Artículo 1.111-A[14] define el vehículo todo terreno como sigue:

Artículo 1.111-A. — Vehículo "todo terreno".
"Vehículos 'todo terreno'" Significará todo vehículo de motor de tres (3) o cuatro (4) ruedas, con un asiento tipo motocicleta en el que el operador monta en horquillas; con manubrio para el control y manejo, con un motor de gasolina de alta eficiencia, destinado, específicamente, para ser utilizado fuera de las

---

[13] Exposición de motivos, Ley de Vehículos y Tránsito de Puerto Rico, Ley Núm. 22-2000, según enmendada.
[14] 9 LPRA § 5001 Inciso (108a).

carreteras pavimentadas, o mejor conocidas como *"off road"*.

Por su parte el Artículo 10.16 de la Ley de Vehículos y Transito dispone, en su parte pertinente, lo siguiente:

Artículo 10.16. — Uso de vehículos todos terrenos, autociclos o motonetas. (9 LPRA § 5296)

(a) **El uso de los vehículos todo terreno, sólo estará permitido en predios de terreno o instalaciones públicas destinadas para su disfrute** o en instalaciones privadas previa autorización de sus dueños, y serán éstos responsables de tomar las medidas de seguridad correspondientes para evitar accidentes. **Los vehículos todo terreno, autociclos o motonetas no podrán transitar por las autopistas, carreteras estatales o demás vías públicas, estatales o municipales, que estén pavimentadas.** Esta prohibición no será de aplicación a aquellos vehículos todo terreno propiedad de los departamentos, agencias, instrumentalidades, municipios o entidades del Gobierno de Puerto Rico o del Gobierno Federal, que se utilizan para funciones de orden público o para garantizar la conservación de recursos naturales en zonas protegidas. Los vehículos todo terreno no podrán transitar en áreas naturales protegidas, tales como Reservas Naturales, Bosques Estatales, Refugios de Vida Silvestre y cauces de ríos, ecosistemas de dunas o humedales, entre otras áreas, según designadas o protegidas mediante ley, reglamento, orden administrativa u ordenanza municipal. Se exceptúa de esta disposición los vehículos utilizados por funcionarios públicos para facilitar el cumplimiento de sus funciones relacionadas a la seguridad pública o a la conservación de las zonas protegidas.

Específicamente, el inciso (e) del citado artículo, establece, además, lo siguiente:

(e) La transportación de un vehículo todo terreno a través de las vías públicas, aceras o paseos o para trasladarlo de un predio de terreno autorizado para operar este tipo de vehículo a otro predio de terreno autorizado, se llevará a cabo utilizando un vehículo de motor con facilidades de carga o de arrastre debidamente autorizado a transitar por las vías públicas.

[…]

**Cualquier vehículo todo terreno utilizado en contravención a las disposiciones a esta Ley será confiscado por los agentes del orden público. Esta acción será tomada a tenor con las disposiciones contenidas en la Ley Núm. 119-2011, según**

**enmendada, conocida como "Ley Uniforme de Confiscaciones".** (Énfasis nuestro).

B.

Sabido es que la confiscación "es el acto de ocupación que lleva a cabo el Estado de todo derecho de propiedad sobre cualesquiera bienes que hayan sido utilizados en relación con la comisión de ciertos delitos". *Universal Ins. et als. v. ELA et al.*, 211 DPR 455 (2023); *Reliable Financial v. ELA*, 197 DPR 289 (2017); *Centeno Rodríguez v. E.L.A.*, 170 DPR 907 (2007). Por la severidad que conlleva dicho acto gubernamental, nuestro Tribunal Supremo ha enfatizado que tal mecanismo representa una privación de la propiedad que debe satisfacer las garantías mínimas del debido proceso de ley. *Íd.*; *Reliable v. Depto. Justicia y ELA*, 195 DPR 917, 924-925 (2016). Asimismo, representa una excepción al mandato constitucional que prohíbe que el Estado tome propiedad privada para fines públicos sin justa compensación. *Íd.*; *Coop. Seg. Múlt. v. E.L.A.*, 180 DPR 655, 662-663 (2011). La potestad gubernamental de apropiarse de bienes relacionados a una actividad ilícita es un procedimiento estatutario que actúa a manera de una sanción adicional a aquella impuesta por razón de la conducta punible que la motiva. *Íd.*; *MAPFRE v. ELA*, 188 DPR 517 (2013).

En nuestra jurisdicción, el proceso de confiscación está regulado por la Ley Uniforme de Confiscaciones de 2011, Ley Núm. 119-2011, según enmendada, 34 LPRA sec. 1724 *et seq.* (Ley de Confiscaciones), la cual provee un trámite justo, expedito y uniforme para la confiscación de bienes por parte del Gobierno. *Coop. Seg. Múlt. et als. v. ELA et al.*, 209 DPR 796 (2022); *Figueroa Santiago et als. v. ELA*, 207 DPR 923 (2021). Mediante dicho estatuto, la Asamblea Legislativa estableció como política pública los mecanismos para facilitar y agilizar el proceso de confiscación de bienes, tanto muebles e inmuebles, así como para velar por los

derechos y reclamos de las personas afectadas por una confiscación. 34 LPRA sec. 1724 nota.

En lo aquí pertinente, el Tribunal Supremo de Puerto Rico ha sostenido que "[a]nte esta intervención del Estado con la propiedad de los ciudadanos y el derecho constitucional que les asiste a no ser privados de sus bienes sin un debido proceso de ley, la legislación vigente contiene una serie de disposiciones dirigidas a garantizar que aquellas personas con interés en la propiedad confiscada puedan impugnar en los tribunales el proceso de confiscación mediante una demanda civil". *CSMPR et al. v. ELA*, 196 DPR 639, 645 (2016). A esos fines, la Ley de Confiscaciones, *supra*, determina, específicamente, a quiénes el Estado tiene la obligación de notificar la confiscación realizada y la tasación de la propiedad; ello, a fin de salvaguardar los derechos constitucionales de las personas con interés legal sobre los bienes confiscados. *Íd.*; *MAPFRE v. ELA,* supra.

Conforme a lo anterior, el Artículo 13 de la citada Ley, 34 LPRA sec. 1724j, establece quiénes deben ser notificados sobre la confiscación. *MAPFRE v. ELA*, supra. En particular, el referido articulado dispone que el Director Administrativo de la Junta de Confiscaciones está obligado a notificar, entre otras, a las siguientes personas:

> (a) A la persona que tuviere la posesión física del bien al momento de la ocupación.
> (b) A aquéllas que[,] por las circunstancias, información y creencia, el Director Administrativo considere como dueños de dicho bien.
> (c) En los casos de vehículos de motor, se notificará, además, al dueño, según consta en el Registro de Vehículos del Departamento de Transportación y Obras Públicas y al acreedor condicional que a la fecha de la ocupación tenga su contrato inscrito.
>
> [...]

Ahora bien, respecto a los términos para notificar la confiscación, el referido artículo establece lo siguiente:

> Toda confiscación se notificará por correo certificado dentro de un término jurisdiccional de treinta (30) días, siguientes a la fecha de la ocupación física de los bienes. La notificación se hará a la dirección conocida del alegado dueño, encargado o persona con derecho o interés en la propiedad, según consta del expediente de la confiscación.
>
> En el caso de vehículos de motor que sean ocupados en virtud de la Ley Núm. 8 de 5 de agosto de 1987, según enmendada, conocida como "Ley para la Protección de la Propiedad Vehicular" (9 L.P.R.A. §§ 3201 et seq.), la notificación se hará dentro de los treinta (30) días siguientes a partir del término de treinta (30) días dispuestos para que los oficiales del orden público lleven a cabo una investigación sobre el bien ocupado. Un vehículo ocupado al amparo de la "Ley para la Protección de la Propiedad Vehicular", no será confiscado a favor del Gobierno de Puerto Rico hasta tanto se culmine el procedimiento dispuesto en dicha Ley. El mismo se mantendrá bajo la custodia de la Policía hasta que se culmine la investigación correspondiente.
>
> En aquellos casos en los que se incaute y retenga cualquier propiedad para alguna investigación relacionada con cualquier acción penal, civil, administrativa o cuando el bien es indispensable para la investigación o como evidencia en el caso, el término para culminar la investigación y emitir la orden de confiscación no excederá de noventa (90) días. Los treinta (30) días para notificar la confiscación comenzarán a contarse una vez concluya dicha acción y se expida la correspondiente orden de confiscación.[15]

En el caso *Reliable Financial v. ELA*, supra, el Tribunal Supremo se pronunció respecto a los términos jurisdiccionales establecidos en el Artículo 13 de la Ley de Confiscaciones, *supra*, para notificar la confiscación a las partes. A tenor, expuso que una vez se ordena la confiscación, existen tres términos para el Estado notificar esta determinación al dueño o parte con interés en la propiedad, todos ellos jurisdiccionales. Conforme al Art. 13 de la Ley Núm.119-2011 (34 LPRA sec. 1724j), como **norma general**, deberá cursarse la notificación en los treinta días siguientes a la ocupación de la propiedad. Por **vía de excepción**, en casos de vehículos de motor ocupados en virtud de las disposiciones de la Ley para la Protección de la Propiedad Vehicular pueden transcurrir hasta sesenta días desde la incautación hasta la notificación. Por último,

---

[15] 34 LPRA sec. 1724j.

el articulo antes citado establece además un periodo de notificación especial, sin plazo definido, aplicable a dos posibles supuestos: (1) cuando la propiedad fuese incautada y retenida para propósitos investigativos relacionados a un caso civil, criminal o administrativo; (2) cuando ésta sirviese como evidencia física en un caso.

El Alto Foro expresó que el referido artículo expresamente limita su aplicación a aquellos casos en los que se incaute y retenga cualquier propiedad para alguna investigación relacionada con cualquier acción. Ambas condiciones, es decir, la incautación, así como la retención para fines investigativos, tienen que darse conjuntamente. *Íd.*

Así, para que el Estado pueda justificar la retención de propiedad confiscada a base del último supuesto del Artículo 13 es necesario determinar si esa propiedad fue incautada y retenida con el propósito de asistir en alguna investigación concerniente a un caso. A esos efectos, deben cumplirse con los requisitos siguientes: (1) que contemporáneamente o cercano a la incautación exista o se inicie algún tipo de investigación de naturaleza civil, penal o administrativa y (2) que esa investigación esté de alguna manera vinculada a la razón para ocupar la propiedad incautada. El estatuto exige establecer, tanto la naturaleza de la investigación, como la necesidad de retener la propiedad para fines asociados a esa investigación.

C.

El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36, es un vehículo para asegurar la solución justa, rápida y económica de un caso. *Serrano Picón v. Multinational Life Ins.,* 212 DPR 981 (2023); *Oriental Bank v. Caballero García,* 212 DPR 671 (2023); *González Meléndez v. Mun. San Juan et al.,* 212 DPR 601 (2023); *Acevedo y otros v.*

*Depto. Hacienda y otros*, 212 DPR 335 (2023); *Universal Ins. y otro v. ELA y otros*, 211 DPR 455 (2023). Dicho mecanismo permite a los tribunales disponer, parcial o totalmente, de litigios civiles en aquellas situaciones en las cuales no exista controversia material de hecho que requiera ventilarse en un juicio plenario y el derecho así lo permita. *Segarra Rivera v. Int'l. Shipping et al.*, 208 DPR 964 (2022). Este mecanismo lo puede utilizar la parte reclamante o aquella parte que se defiende de una reclamación. 32 LPRA Ap. V, R. 36.1 y 36.2.

Mediante el mecanismo de sentencia sumaria, se procura profundizar en las alegaciones para verificar si, en efecto, los hechos ameritan dilucidarse en un juicio. *León Torres v. Rivera Lebrón,* 204 DPR 20, 42 (2020). Este cauce sumario resulta beneficioso tanto para el tribunal, como para las partes en un pleito, pues se agiliza el proceso judicial, mientras simultáneamente se provee a los litigantes un mecanismo procesal encaminado a alcanzar un remedio justo, rápido y económico. *Segarra Rivera v. Int'l. Shipping et al.*, supra. Como se sabe, en aras de prevalecer en una reclamación, la parte promovente debe presentar prueba incontrovertible sobre todos los elementos indispensables de su causa de acción. *Íd.*

Nuestro ordenamiento civil y su jurisprudencia interpretativa impone unos requisitos de forma con los cuales hay que cumplir al momento de presentar una solicitud de sentencia sumaria, a saber: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos

hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales se debe dictar la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. 32 LPRA Ap. V, R. 36.3; *Oriental Bank v. Caballero García*, supra; *Pérez Vargas v. Office Depot*, 203 DPR 687 (2019). Si la parte promovente de la moción incumple con estos requisitos, "el tribunal no estará obligado a considerar su pedido". *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 111 (2015).

Por otro lado, "la parte que desafía una solicitud de sentencia sumaria no puede descansar en las aseveraciones o negaciones consignadas en su alegación". *León Torres v. Rivera Lebrón,* supra*, pág. 43. Por el contrario, quien se opone a que se declare con lugar esta solicitud viene obligado a enfrentar la moción de su adversario de forma tan detallada y específica como lo ha hecho la parte promovente puesto que, si incumple, corre el riesgo de que se dicte sentencia sumaria en su contra, si la misma procede en derecho. *Íd.*

Por ello, en la oposición a una solicitud de sentencia sumaria, la parte promovida debe puntualizar aquellos hechos propuestos que pretende controvertir y, si así lo desea, someter hechos materiales adicionales que alega no están en disputa y que impiden que se dicte sentencia sumaria en su contra. *León Torres v. Rivera Lebrón,* supra. Claro está, para cada uno de estos supuestos deberá hacer referencia a la prueba específica que sostiene su posición, según exigido por la Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3. *Íd.* En otras palabras, la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa. *Íd.* De lo anterior, se puede colegir que, ante el incumplimiento de las partes con las formalidades de la Regla 36 de Procedimiento Civil de 2009, *supra*, la consideración de sus posiciones descansa en la sana discreción del Tribunal.

Al atender la solicitud, el Tribunal deberá asumir como ciertos los hechos no controvertidos que se encuentren sustentados por los documentos presentados por la parte promovente. *E.L.A. v. Cole*, 164 DPR 608, 626 (2005). Toda inferencia razonable que pueda surgir de los hechos y de los documentos se debe interpretar en contra de quien solicita la sentencia sumaria, pues solo procede si bajo ningún supuesto de hechos prevalece la parte promovida. *Íd.*, pág. 625. Además, al evaluar los méritos de una solicitud de sentencia sumaria, el juzgador o juzgadora debe actuar guiado por la prudencia y ser consciente, en todo momento, que su determinación puede conllevar el que se prive a una de las partes de su "día en corte", componente integral del debido proceso de ley. *León Torres v. Rivera Lebrón,* supra, pág. 44.

Sin embargo, la sentencia sumaria generalmente no procederá cuando existan controversias sobre hechos esenciales materiales, o si la controversia del caso está basada en elementos subjetivos como intención, propósitos mentales, negligencia o credibilidad. *Cruz, López v. Casa Bella y otros*, 213 DPR 980 (2024); *Acevedo y otros v. Depto. Hacienda y otros*, supra; *Segarra Rivera v. Int'l. Shipping et al.,* supra. Un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. *Banco Popular de Puerto Rico v. Zorrilla Posada y otro*, 2024 TSPR 62, resuelto el 17 de junio de 2024; *Oriental Bank v. Caballero García,* supra, pág. 7; *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 299 (2012); *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010). Ahora bien, el Foro de última instancia ha reiterado que cualquier duda no es suficiente para derrotar una moción de sentencia sumaria, pues debe tratarse de una incertidumbre que permita concluir que existe una controversia real sobre hechos relevantes y pertinentes. *Íd.* Además, existen casos que no se deben resolver mediante sentencia sumaria porque resulta difícil reunir la

verdad de los hechos mediante declaraciones juradas o deposiciones. *Jusino et als. v. Walgreens*, 155 DPR 560, 579 (2001). De igual modo, no es apropiado resolver por la vía sumaria "casos complejos o casos que involucren cuestiones de interés público". *Íd.* No obstante, la sentencia sumaria procederá si atiende cuestiones de derecho. *Universal Ins. y otro v. ELA y otros*, supra.

El Tribunal Supremo de Puerto Rico ha discutido los criterios que este Tribunal de Apelaciones debe considerar al momento de revisar una sentencia dictada sumariamente por el foro de instancia. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 679-680 (2018); *Meléndez González et al. v. M. Cuebas*, supra, págs. 118-119. Sobre ese particular, nuestro más Alto Foro señaló que:

> [E]l Tribunal de Apelaciones debe: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra,* y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. *Roldán Flores v. M. Cuebas et al.,* supra, pág. 679.

Conforme a lo anterior, nos encontramos en la misma posición que el Tribunal de Primera Instancia para evaluar la procedencia de una sentencia sumaria. *Banco Popular de Puerto Rico v. Cable Media of Puerto Rico, Inc. y otro*, 2025 TSPR 1, resuelto el 7 de enero de 2025; *Banco Popular de Puerto Rico v. Zorrilla Posada y otro*, supra; *Birriel Colón v. Econo y otro*, 213 DPR 80 (2023); *Serrano Picón v. Multinational Life Ins.*, supra; *González Meléndez v. Mun. San Juan et al.*, supra; *González Santiago v. Baxter Healthcare*, 202 DPR 281, 291 (2019). Por ello, nuestra revisión es una *de novo* y nuestro análisis debe regirse por las disposiciones de la Regla 36 de

Procedimiento Civil, *supra,* así como de su jurisprudencia interpretativa. *González Meléndez v. Mun. San Juan et al.*, supra. A tenor con la referida normativa, dicha revisión se realizará de la manera más favorable hacia la parte que se opuso a la solicitud de sentencia sumaria en el foro de origen y realizando todas las inferencias permisibles a su favor. *Birriel Colón v. Econo y otro*, supra; *Meléndez González et al. v. M. Cuebas*, supra, pág. 118. De esta manera, si entendemos que los hechos materiales realmente están incontrovertidos, debemos revisar *de novo* si el foro primario aplicó correctamente el derecho. *González Meléndez v. Mun. San Juan et al.*, supra.

A la luz de la normativa antes expuesta, procedemos a disponer de la controversia ante nuestra consideración.

### III.

En su primer señalamiento de error, el Estado alega que el TPI incidió al declarar con lugar la solicitud de sentencia sumaria de Ferreiro Cepero. En dicho señalamiento, el Estado sostiene que el TPI incidió en dos aspectos, primero, en declarar ha lugar la solicitud de sentencia sumaria, aun cuando la prueba presentada por el Estado demostró la necesidad de retener el vehículo todo terreno para una investigación conforme establece el Artículo 13 de la Ley de Confiscaciones, *supra.* En segundo lugar, arguyó que el TPI erró por no considerar que *como mínimo*, existía controversia de hechos respecto a si el vehículo fue ocupado para fines investigativos conforme dicho articulado.

A tenor con el marco jurídico previamente expuesto*,* nos encontramos en la misma posición que el TPI en revisar una solicitud de sentencia sumaria. En primer lugar, nos compete evaluar si las partes cumplieron con los requisitos de forma exigidos por la Regla 36.3 de Procedimiento Civil, *supra*, respecto a la moción de sentencia sumaria, así como su oposición.

De una revisión *de novo* de la solicitud de sentencia sumaria y la oposición, determinamos que ambas cumplen con los requisitos de la Regla 36. Ahora bien, en su solicitud de sentencia sumaria, Ferreiro Cepero acompañó como única prueba en apoyo de su solicitud, copia de la notificación de confiscación con fecha del 10 de abril de 2024 y copia frontal y posterior del sobre y matasellos fechado con fecha del 11 de abril de 2024. Con dicha prueba pretendió demostrar que no existía controversia de hecho de que este fue notificado de forma tardía sobre la confiscación. Respecto a Narváez Díaz, alegó que la notificación no fue adecuada, pues esta llegó devuelta.

Al oponerse a la moción, el Estado acompañó su escrito en oposición con Informe de Incidente (Anejo I), Orden de Confiscación (Anejo II), Notificaciones (Anejo III) y copia de la carta SAOC-CP-3-32-1-220 de envío de tablilla al Director de DTOP del 25 de marzo de 2024 (Anejo IV); documentos cuyas fechas de trámite están comprendidas dentro del término de 90 días que tenía el Estado para culminar la investigación, conforme establece el último párrafo del Artículo 13 de la Ley de Confiscaciones, *supra.*

Por tanto, contrario a lo razonado por el TPI, la realidad es que, existe controversia de hecho respecto a sí el contenido de la notificación de confiscación cumple con la mejor práctica de revelar al dueño o persona con interés en la propiedad los motivos de la investigación lo más cercano a la incautación, evitando así justificaciones *a posteriori* para la demora por parte del Estado.

En el dictamen apelado, el foro *a quo* determinó que, dado a que el Informe de Incidente consignaba el 3 de marzo de 2024 como fecha de esclarecimiento y en la notificación de confiscación, el Estado no detalló cuál fue el motivo de la investigación. Lo anterior, pues determinó que el Estado no proveyó el detalle conforme pautado por el Alto Foro en *Reliable v. ELA*, supra, en cuanto a la

razón para la investigación. En el caso ante nos, la comunicación de confiscación dirigida a Ferreiro Cepero y Narváez Díaz comunicaba lo siguiente:

> La ocupación se llevó a cabo el **3 de marzo de 2024,** y obedeció a que el **3 de marzo de 2024,** se utilizó en violación al **Art. 10.16 de la Ley de Tránsito,** en **Villalba,** Puerto Rico. El vehículo se ocupó y se retuvo para investigación y evidencia física por hechos relacionados al caso; por lo cual la Orden de Confiscación fue emitida el **20 de marzo de 2024.** La Certificación de Inspección de Vehículos de Motor y Equipo Pesado (sic)[16] preparada por el Negociado de la Policía de Puerto Rico fue expedida el **3 de marzo de 2024.**[17]

De lo antes expuesto, se desprende con claridad (1) la fecha de ocupación del vehículo (3 de marzo de 2024), (2) la **razón** por la cual se ocupó (violación al Art. 10.16 de la Ley 22-2000), (3) que el vehículo todo terreno se ocupó y retuvo para *fines de investigación por hechos relacionados al caso* (violación al Art. 10.16, *supra*), (4) que se emitió una Orden de Confiscación el 20 de marzo de 2024 (17 días luego de la ocupación) y (5) que la Certificación de Inspección preparada por el Negociado de la Policía se expidió el 3 de marzo de 2024. Sin embargo, no surge detalle de cuál fue el motivo para que el Estado retuviera el vehículo todo terreno para investigación y evidencia. Por tanto, determinamos que existe la siguiente controversia de hecho:

> Si el Estado notificó adecuadamente a Ferreiro Cepero los motivos de la investigación realizada que justificara la retención de la propiedad.

No podemos perder de vista que, conforme resuelto por el Tribunal Supremo en *Reliable v. ELA,* supra, una vez impugnada una notificación por tardía, si el Estado interesa valerse del periodo de tiempo adicional consignado en la última modalidad del Art. 13 de la Ley de Confiscaciones, *supra,* le corresponde el peso de probar,

---

[16] Conforme surge del Anejo IV, la certificación es de la División de Vehículos Hurtados de Ponce. Véase, pág. 107 del apéndice del recurso.
[17] Negritas en el original. Subrayado nuestro.

mediante *prueba fehaciente,* la conexión entre el motivo para la ocupación de la propiedad retenida y la investigación correspondiente[18]. Un examen detenido de la prueba presentada por el Estado refleja que, la notificación de confiscación a Ferreiro Cepero no consigna cuál fue la razón por la que se inició la investigación del caso.

Lo anterior, confrontado con la prueba presentada por Ferreiro Cepero, demuestra que existe controversia de hecho sobre los motivos que originaron la investigación del Estado relacionada a los hechos del caso. Por tanto, incidió el foro primario al determinar que no existen controversias de hecho, cuando, como mínimo, existe controversia sobre si el vehículo fue ocupado para fines investigativos y la razón para investigación. Dicha controversia de hecho es esencial, impide la resolución sumaria del caso. Concluimos que el Estado tiene razón, pues de una revisión *de novo,* concluimos que existe controversia de hecho sobre las razones que motivaron la investigación, lo que impide la resolución sumaria del caso.

En relación con el segundo señalamiento de error, concluimos que el foro primario incidió al determinar que el Estado debió intentar realizar un esfuerzo razonable adicional para reproducir nuevamente el envío de la notificación a Narváez Díaz. Conforme expone el Artículo 15 de la Ley de Confiscaciones, *supra,* en aquellos casos que la notificación sea devuelta, el término de treinta (30) días para impugnar la confiscación comienza a computarse desde que la referida notificación sea recibida por el Departamento de Justicia[19]. En virtud de lo anterior, hacemos énfasis que el Artículo 15 de la Ley de Confiscaciones, *supra,* no le exige al Estado re notificar la notificación de confiscación en los casos en que esta sea devuelta.

---

[18] *Reliable v. ELA,* supra, pág. 306.
[19] 34 LPRA § 1724l.

Por el contrario, el precitado artículo señala que, de llegar devuelta la notificación, el término para impugnar la confiscación comienza a decursar a partir de la fecha en que sea recibida por el Departamento de Justicia, sin necesidad de volver a notificarla.

En vista de los fundamentos antes expuestos, procede revocar la *Sentencia* apelada. Se devuelve el caso al foro de instancia para la celebración de una vista a los fines de dilucidar la controversia de hecho respecto a los motivos de la investigación.

IV.

Por los fundamentos antes expuestos, se revoca la Sentencia apelada. Se ordena la devolución del caso al Tribunal de Primera Instancia para la celebración de una vista a los fines de dilucidar la controversia de hecho respecto a los motivos de la investigación.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones